Oliver O. Phillips and Hill Burgwin, Trustees of the Ormsby Railroad Property, Appellants, v. the Pittsburgh, Virginia & Charleston Railway Company, Appellants.

*Railroads—Lease—Right of way—Injunction—Cross-bills—Equity.*

Where the owners of a strip of land upon which a narrow gauge coal railroad had been built leases the land with the proviso that " the said

lessee shall not obstruct or interfere with the free use and operation of the present coal railroad now located and in use on said strip of land," the lessors have no right to replace the narrow gauge coal railroad by a standard gauge railroad, and the lessees have no standing in a court of equity for a decree declaring their use of the strip exclusive, on the mere averment in a cross-bill that the coal had been exhausted, without any proof that the lessors had abandoned the right reserved.

Argued Nov. 15, 1898. Appeal, No. 174, by plaintiffs, and No. 189, by defendant, Oct. T., 1898, from decree of C. P. No. 3, Allegheny Co., Feb. T., 1894, No. 726, on bill in equity and cross-bill. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity and cross-bill for injunctions. McCLUNG, J., found the facts to be as follows :

On January 30, 1894, the plaintiffs filed their bill to restrain the defendant company from interfering with the construction and maintenance by plaintiffs of a railway on a twenty foot strip of land at Twenty-first street, Pittsburg, and especially from interfering with such construction at the crossing at Josephine street.

Defendant filed its answer March 4, 1894, and on March 21, 1894, filed a cross-bill, praying that it (the plaintiff in the cross-bill) be adjudged to have the right to the exclusive occupancy of said twenty foot strip of ground, from the Monongahela river to Quarry lane, and that Phillips and Burgwin, trustees (plaintiffs in the original bill) be enjoined from constructing a railway thereon, or entering upon the same. .

An answer to the cross-bill, and replications were filed, and upon the issues thus made up, the case was tried.

### FINDINGS OF FACT.

[Note. The parties will be referred to as plaintiffs or defendant in accordance with their position in the original bill.]

1. Plaintiffs are the owners in fee of a certain strip or parcel of land in the middle of Twenty-first street, formerly Railroad street, in the twenty-fifth, twenty-sixth and twenty-seventh wards of the city of Pittsburg, and extending from a point in the twenty-seventh ward to low water-mark in the Mononga-hela river.

2. Oliver Ormsby died intestate in 1832 seized of the tract of land described in paragraph three of plaintiffs' bill and also, of a tract of coal land immediately back or south of the above tract.

3. In 1841 proceedings in partition of this estate were instituted in the orphans' court of Allegheny county and the jury of inquest made a plan of the tract fronting on the Monongahela river, and laid out thereon "for the use of the representatives of the said Oliver Ormsby, their heirs and assigns," certain streets and alleys, including Ormsby, now Twenty-first street, and other north and south streets, and Josephine and other east and west streets. The ground comprised in this tract was allotted to the different heirs. The coal was allotted to seven of decedent's children and their heirs to hold in common together, with all the appurtenances of the coal pits used with the railroad. There was also allotted to them in common "the railroad twenty feet wide in the middle of Ormsby (afterwards Railroad and now Twenty-first) street, extending, etc. (from the coal tract through the other tract to the Monongahela river) together with the appurtenances of said railroad and the right to maintain and renew said railroad forever." The inquisition was confirmed by decree made April 21, 1842.

4. The streets and alleys laid out upon the plan of this partition were opened and accepted by the public, and became highways of the borough of East Birmingham, now part of the city of Pittsburg.

5. Prior to the partition the railroad was used for transporting coal from the Ormsby tract to the Monongahela river. It so continued to be used after the partition, and on January 1, 1867, the coal tract and railroad were leased to Joseph Keeling for a term of twenty years from that date. Keeling owned coal in the rear of the Ormsby tract. He practically exhausted the Ormsby coal, probably about 1871 or 1872—certainly as early as 1875—but continued until the end of his lease, or until within a few months thereof, to transport coal mined from his own tract through the Ormsby tunnel and over the railroad in question to the Monongahela river, and to a coal yard on Twenty-first street.

6. In 1881 the heirs of Oliver Ormsby, then owners in common of the coal and railroad conveyed the same to Hill Burg-

win and John O. Phillips as trustees. In 1891 John O. Phillips died, and Oliver O. Phillips was appointed trustee in his stead.

7. Prior to December 1, 1873, the Pittsburgh, Virginia & Charleston Railway Company, under authority granted by its charter, and with the consent of the borough of East Birmingham, constructed its railway along Josephine street, a public highway, by virtue of the dedication and acceptance before referred to, and in so doing crossed the Ormsby railroad, located on the twenty foot strip, at right angles. Defendant occupied the street prior to the new constitution, and making no change in the grade of the street, paid no compensation to abutting owners.

8. Upon January 1, 1886, the then trustees of this twenty foot strip, entered into an article of agreement with the Pittsburg & White Hall Railroad Company, whereby they granted to said railroad company, for a period of thirty years, with right to renew for a like period "a right of way for the construction and operation of a railroad, over and along the twenty foot strip of land in the center of Twenty-first street, formerly Railroad or Ormsby street, from the Monongahela river to Quarry lane, as reserved for the owners in common of said Ormsby Coal Road in the partition proceedings among the heirs of Oliver Ormsby, deceased, in the orphans' court of Allegheny, at No. 32 of March term, 1841, so however, and it is hereby provided, that the construction and operation of said railroad shall not obstruct or interfere with the free use and operation of the present coal railroad, now located and in use on said strip of land." Said article of agreement is set forth in full as exhibit "A" attached to defendant's answer, and also to the cross-bill.

9. During the early part of 1886, under the above agreement, the White Hall Railroad Company built a single track, standard gauge road, alongside of the narrow gauge Ormsby coal road then operated by Keeling; said standard gauge road extending along said twenty foot strip from a point about the distance of one block, south of the Monongahela river to a point one block north of Josephine street, along which defendant's main line passes, there turning to the east along Mary street.

10. After the building of the White Hall road, Keeling & Company continued to operate the narrow gauge road, transport-

ing coal thereon to the Monongahela river until September 18, 1886, when their engine house burnt. They failing to secure a renewal of their lease, did not rebuild the engine house, and hence did not transport any more coal over the road. In October, 1886, the defendant company took out the crossing frogs at Josephine street thus cutting the coal road in two. When called to account for this, defendant's superintendent recognized the right of the coal road to cross, and promised to replace the frogs as soon as those operating the road were ready to resume the hauling of coal.

11. From October, 1886, until the present time, the coal road has not been used, nor has the tunnel. The road has become greatly dilapidated and the tunnel has been closed at both ends by the crumbling and slipping of the earth. There is no testimony as to its condition under the hill but presumably it can be used by opening the mouth and making some repairs. There are several large tracts of coal beyond the southern mouth which could be marketed through this tunnel.

12. After January 1, 1886, and prior to 1893, the White Hall Railroad Company and the Pittsburgh, Virginia & Charleston Railroad Company, the defendant, became by due and proper proceedings, merged or consolidated, under the name of the latter company.

13. About October, 1893, plaintiffs began to construct on said twenty-foot strip of ground between the river and Quarry street, a standard gauge railroad track, but were stopped by the refusal of defendant to make or permit a crossing at Josephine street. And thereupon the proceedings in this case were instituted.

14. The testimony does not show an intention on the part of plaintiffs to abandon such rights with respect to the maintenance of a railroad along this strip, if any, as remained to them after the execution of the agreement with the White Hall Railroad Company.

15. The twenty-foot strip will accommodate a standard gauge track and a narrow gauge one, such as heretofore has been used by plaintiffs' lessees, but will not, without having the cars overhang the street, accommodate two standard gauge tracks.

Under the facts, the contention of the plaintiffs is that they have a right to build and maintain upon this strip and across Josephine street and defendant's road a standard gauge rail-

road, while under the same facts the defendant company contends that they do not have the right to build or maintain a railroad of any width or of any kind along any portion of the strip between the Monongahela river and Quarry street.

As in one aspect it involves the whole matter at issue, the logical method will be to discuss first the proposition presented by the defendant in the cross-bill.

The contention is, first, that the right to maintain this road ceased as soon as the Ormsby coal was exhausted, and, second, that, this aside, the grant to the White Hall road carried the right to the exclusive occupancy of the twenty-foot strip as soon as the Keeling lease expired, which was January 1, 1887. When the controversy began the White Hall road had become merged into the defendant company, and we can discuss the matter as if the lease had been made directly to defendant.

It is said that the first proposition is practically decided by the case of Republic Iron Works v. Burgwin, 139 Pa. 439.

This case, however, simply decided that the right to build branch roads over property belonging or allotted to other parties, secured by the proceedings in partition to these plaintiffs, was merely an appurtenance which ceased when the coal was exhausted.

Here we have the question of taking away the right to use, as it was then used, property which plaintiffs took and yet hold in fee. They were given the strip in fee and from this flows the right to make any lawful use of it. But in addition they were given in express terms "the right to maintain and renew said railroad forever." The right, of course, could be taken away by condemnation proceedings under the right of eminent domain. But no such proceedings have ever taken place here. The Ormsby heirs dedicated Josephine street to public use, subject to the right of plaintiffs to cross it with their railroad. The dedication was accepted as offered, and the defendant company simply comes upon the street as one of the general public.

The strip of ground would be practically useless if cut into sections by impassable streets, and yet admittedly the title to it remains in the plaintiffs after the exhaustion of the coal. From this the intention seems plain, but as if to avoid the shadow of a doubt the Ormsby heirs, well knowing that the

coal would not last forever, expressly provide that plaintiffs shall have "the right to maintain and renew said railroad forever."

If the right to cross ceased when the Ormsby coal was exhausted, then it ceased some twelve or fifteen years before the making of the White Hall lease, probably about the time of the construction of defendant's main line, possibly before; yet for all these years the crossing was permitted, and the right to cross was recognized in the White Hall Railroad lease, because the coal road could not exist if it could not cross Josephine street. The right to maintain plaintiffs' road across Josephine street did not cease when the Ormsby coal was exhausted.

Nor do we think that all their rights with respect to the occupation of this strip of ground passed to defendant by the White Hall Railroad lease.

By that article of agreement plaintiffs granted to defendant "a right of way for the construction and operation of a railroad over and along the twenty foot strip of land in the center of Twenty-first, formerly Railroad or Ormsby, street from the Monongahela river to Quarry street, as reserved," etc., in partition proceedings. This of itself would entitle the grantee to such room upon said strip as would afford proper facilities for the construction and operation of a railroad, and without more would probably carry the right to occupy the entire strip. But there is added "so however, and it is hereby provided that the construction and operation of said railroad shall not obstruct or interfere with the free use and operation of the present coal railroad now located and in use on said strip of land." The White Hall Company proposed to build a standard gauge track and the coal road then there was a narrow gauge road. The strip would accommodate a single track, standard gauge, and the existing coal road, and it does not require argument to show that the extent of the grant was not such as to crowd out the coal road—especially is this true when it is considered, as is now contended by defendant, that the strip is not wide enough to accommodate a double track standard gauge road. The right of occupancy granted to defendant was not broadened when the Keeling lease expired. The grantee was not simply forbidden to interfere with Keeling's operation of the road under his lease. The prohibition is as to interference "with the free use and

operation of the present coal railroad now located and in use
on said strip of land." That railroad was the railroad of plain-
tiffs, which they had the right, not only to lease, but " to main-
tain and renew forever."

The prayer of the cross-bill must be refused.

Plaintiffs pray that defendant may be enjoined from interfer-
ing with them in constructing along this strip and across de-
fendant's road at Josephine street a standard gauge road. As
already appears, we are of opinion that they have the right to
maintain a narrow gauge road along said strip. Probably equity
would not, if the right was settled, require the actual putting
in of the crossing frogs for such a road until it appeared that
it was ready for use and about to be used. We need not dis-
cuss this matter, however, for we have now before us simply
the proposal to build and cross with a standard gauge road.
Plaintiffs do not have the right to build such road. A standard
gauge road could not be operated on the strip by the side of the
White Hall road without both inconvenience and danger. When
plaintiffs granted a right of way across the strip, they provided
only that there should remain room for " the present coal rail-
road now located and in use." That road was a narrow gauge
one, and it left reasonable space, and only reasonable space, for
the White Hall Company's single track road. This makes the
meaning of the agreement between the parties perfectly plain,
and the suggestion that the municipal authorities might wink
at an encroachment upon the street by an overhang of the cars
cannot change it. Plaintiffs' bill should be dismissed. As,
however, the defendant, in addition to denying the existence of
any right whatever in plaintiffs, removed the crossing frogs
without either consultation or notice, it should pay the costs.
Let a decree be prepared.

The court entered the following decree :

And now, to wit: July 13, 1896, this cause came on to be
heard upon the pleadings and proofs adduced by the respective
parties, and was argued by counsel, and, upon consideration
thereof, it is ordered, adjudged and decreed (1) that the plain-
tiffs have the right to reconstruct, restore and maintain and
use their railroad upon the twenty foot strip of land described
in the bill and across the tracks of the several railroads owned
by the defendant, of the gauge and in the location as the same

was previous to the interference therewith by the defendant ; (2) that the other prayers for relief contained in said bill and cross-bill be denied ; (3) that the defendants pay the costs of this suit.

*Error assigned* by plaintiffs among others was in entering a decree refusing the relief prayed for in the plaintiffs' bill.

*Error assigned* by defendant among others was the decree of the court.

*Johns McCleave*, with him *D. T. Watson* and *A. P. Burgwin*, for Oliver O. Phillips and Hill Burgwin, trustees, appellants in No. 189.—When an easement in land is granted in general terms without giving definite location and description to it, so that the part of the land over which the right is to be exercised cannot be definitely ascertained, the grantor does not thereby acquire a right to use the servient estate without limitation as to the place or mode in which the easement is to be enjoyed. Where the rights granted have been once exercised in a fixed and defined course, with the full acquiescence and consent of both parties, it cannot be changed at the pleasure of the grantee. If it be admitted that he has the right originally to locate the place in which the easement is to be enjoyed, he cannot afterwards alter it: Jennison v. Walker, 11 Gray, 423 ; Westchester & Phila. R. R. v. Goddard, 33 Am. & Eng. R. R. Cases, 195 ; Philadelphia & Reading R. R. v. Obert, 109 Pa. 193 ; Pittsburg & Connellsville R. R. v. Penna. R. R., 39 Pitts. Leg. Jour. 314 ; Western Penna. R. R. Co.'s App., 104 Pa. 406 ; Philadelphia & Gray's Ferry Passenger Ry. Co.'s App., 102 Pa. 123.

The owners in fee of this twenty foot strip have all the rights to the use of the street that belong to the general public ; and in addition thereto they have also certain rights not possessed by the general public. They may temporarily interfere with the use of a street for public travel, providing they do so in a reasonable manner for special purposes and for a temporary period : North Manheim Twp. v. Arnold, 119 Pa. 380 ; Goss v. Calhane, 113 Mass. 423 ; Angell on Highways, sec. 303 ; Elliott on Roads and Streets, 524 ; Northern Central Ry. v. Com., 90 Pa. 300 ; Craig v. Rochester, etc., R. R., 39 Barb. 494.

*George B. Gordon*, with him *William Scott*, for Pittsburg, Virginia & Charleston Railway Company, appellants in No. 174.—
The case of Republic Iron Works v. Burgwin et al., 139 Pa. 439, is a conclusive answer to the position taken by the trustees.

It is true that sometimes the words "right of way" of a railway are used in ordinary conversation as descriptive of the thing itself, but this is not the legal signification. The words "right of way" in a deed describe the tenure, not the land granted: 8 Rapalje & Mack's Digest of Railroad Law, 326; Junction R. R. v. Philadelphia, 88 Pa. 427.

Of course, in a grant of a right of way for a railroad where there is no designation of the property granted, the presumption is that it was the intention of the one party to grant and the other to take the width of sixty feet authorized by the charter of the company: Jones v. Erie & Wyoming Valley R. R., 144 Pa. 629; Phila. & Reading R. R. v. Overt, 109 Pa. 193.

As to the property held by a railroad under such a tenure it is, of course, entitled to the exclusive occupancy: Philadelphia & Reading R. R. v. Hummell, 44 Pa. 275; Pa. S. V. R. R. v. Paper Mills, 149 Pa. 18.

OPINION BY MR. JUSTICE WILLIAMS, January 2, 1899:

These are cross appeals. The question raised by the bill is over the power of the plaintiffs therein to occupy concurrently with the defendant a strip of land twenty feet wide in the center of Twenty-first street in the city of Pittsburg on the west side of the Monongahela river. That raised by the cross-bill is over the right of the plaintiffs therein to the exclusive use of this same strip of land by virtue of a lease from Phillips and Burgwin to the Pittsburgh, Virginia and Charleston Railway Company executed on January 1, 1886, for a term of thirty years, with the right to extend the same for another period of thirty years thereafter. There is no denial that the trustees had title to this strip of land prior to January 1, 1886, and the right to use it in any lawful manner. The Ormsby estate, represented by the trustees, owned two adjoining tracts of land on the west side of the Monongahela river. One lay along the river and extended back from it to the elevated land in which the coal measures were found. The other, which adjoined it, was in the coal measures, and was being mined for its coal by persons interested

in the estate. From the pit's mouth upon this latter tract a narrow gauge railroad had been built across the easternmost tract, extending to the river's bank, by means of which the coal was transported to boats on the river. The right of way or location of this railroad was along a strip of land twenty feet wide in the middle of a street laid out by the trustees, and now known as Twenty-first street. Although the use of this coal railroad had diminished, prior to January 1, 1886, with the diminishing coal in the Ormsby lands, yet the right to maintain and operate it was in no way impaired, and the title to the twenty foot strip in the center of Twenty-first street was plainly in the trustees. By the lease executed on that day the Pittsburgh and White Hall Railroad Company acquired a right to build and operate on this strip of land in Twenty-first street, from the Monongahela river to Quarry lane, a standard gauge railroad. This grant was clogged with one condition in favor of the old coal road, which was in the following words : " The said lessee shall not obstruct or interfere with the free use and operation of the present coal railroad now located and in use on said strip of land." Beyond the right so reserved to operate the old coal railroad, the trustees parted absolutely with their control over the strip described, for the full term of the lease.

The lessees succeeded them in the control and use of the strip of land with the single exception that they could not obstruct the use of the coal railroad as it then stood in gauge or line of actual construction. The rights of the Pittsburgh and White Hall Railroad Company are now regularly vested in its successor, the Pittsburgh, Virginia and Charleston Railway Company, defendant in the bill and plaintiff in the cross-bill. The trustees are now attempting, not to repair or rebuild the old coal railroad as it was located and in use on the ground on January 1, 1886, but to build a new standard gauge railroad by the side of the defendant's railroad covering the entire balance of the twenty foot strip, and extending over upon the highway. The defendants objected to this appropriation, and for that reason the trustees resorted to a bill in equity, in which they ask that an injunction issue restraining the defendants " from interfering in any way with the construction, maintenance and operation of plaintiffs' railroad anywhere on their twenty foot strip of land in Twenty-first street," etc. It is very clear from the language of

their own lease of January 1, 1886, that the trustees have no such right in this strip as they here assert.  Their right to maintain their coal road is not asserted by them, but the right to build a standard gauge railroad anywhere they choose, within the limits of the strip in Twenty-first street, is what is insisted upon in the bill.  They have shown the possession of no such right by them since January 1, 1886, when they parted with all rights in Twenty-first street, save only the right to maintain the old coal railroad, of the gauge and location it then had.  The bill should therefore have been dismissed at the cost of the plaintiffs.

The cross-bill recites the lease by the trustees to the Pittsburgh and White Hall Railroad Co., alleges that the limitation therein forbidding the obstruction of the old coal railroad was in the interest of the lessor's coal only, that the Ormsby coal is now fully exhausted and the consequent right to maintain and operate the old coal railroad is now at an end, and asks a decree adjudicating the right of the plaintiff in the entire breadth of the twenty foot strip to be exclusive and without limitation for the full term of its lease.  This seems to us to narrow the effect of the limitation in the lease.  That limitation provides that the lessee shall not " obstruct or interfere with the free use and operation of the present coal railroad now located and in use on said strip of ground."  It is not alleged that the right so reserved has been expressly released.  We are not prepared to say from what is now before us that it has been lost or abandoned.  Long disuse of such a right as is clearly retained by the trustees under this lease, coupled with the total exhaustion of the coal for the transportation of which the coal road was used, might support the theory of an abandonment of the right reserved ; but we do not think the evidence before us justifies us in saying that all rights in the old coal road are absolutely gone, and that the plaintiff has acquired an exclusive title to the whole of the twenty foot strip.  The plaintiff has an exclusive right to build, operate and maintain its standard gauge railroad under the lease of January 1, 1886, and in accordance with its terms ; but in the few years elapsing since that date we do not see that the legal relations existing between lessors and lessee have been so changed as to justify the contention of the railroad company.  We think therefore that the cross-bill should be dismissed at the cost of the plaintiff, upon the

ground that the case discloses no reason for holding that the trustees have wholly lost, and the railroad company acquired, the old coal road and the ground on which it was located in 1886. The decrees appealed from are so far modified as to make each stand as a decree dismissing the plaintiffs' bill at the plaintiffs' costs, and as so modified the decrees are affirmed. Let decrees be entered accordingly.